UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| HENDRIK BLOCK,<br><br>                    Plaintiff,<br><br>        v.<br><br>GENNARO'S LIMITED LIABILITY<br>COMPANY, et al.,<br><br>                    Defendants. | Case No.  21-cv-00192-VKD<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR DEFAULT JUDGMENT<br>AGAINST DEFENDANT GENNARO'S<br>LIMITED LIABILITY COMPANY**<br><br>Re: Dkt. No. 83 |

In this disability rights action, plaintiff Hendrik Block sues for alleged accessibility violations he says he encountered during a September 2020 visit to a store then known as Kwik & Convenient ("Facility") in San Jose, California.[1]  He asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, *et seq*., the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53, and the California Health & Safety Code §§ 19953, *et seq*.  Mr. Block seeks injunctive relief, as well as statutory damages, attorneys' fees and costs.

Earlier this year, Mr. Block reached a settlement with defendant Ganeshkrupa 86 Corporation ("Ganeshkrupa 86"), which operates the Facility.  Mr. Block has since dismissed Ganeshkrupa 86 from this case.  Dkt. No. 80.

Mr. Block now moves for default judgment on his ADA and Unruh Act claims[2] against the

---

[1] According to Mr. Block, the store is now known as BWS Beer Wine Spirits.  *See* Dkt. No. 83 at 1.

[2] Mr. Block's motion does not seek judgment based on his claim under the California Health & Safety Code, and the Court does not address that claim in this order.  As discussed below, Mr. Block is requested to advise whether this claim should be dismissed.

United States District Court<br>Northern District of California

sole remaining defendant, Gennaro's Limited Liability Company ("Gennaro's"), which is identified as the owner of the real property where the Facility is located. Dkt. No. 83 at 1. Although Gennaro's initially appeared through counsel in this action, the Court subsequently granted counsel leave to withdraw from this matter, on the condition that they must continue to accept service of papers for the purpose of forwarding them to Gennaro's. Dkt. No. 70. The Court also warned Gennaro's that it must retain new counsel and that the failure to do so may lead to an order striking its pleadings or entry of Gennaro's default. *Id.*

Gennaro's has not appeared through other counsel, and Mr. Block says that Gennaro's has stopped participating in the litigation. At his request, the Clerk of the Court entered Gennaro's default on March 23, 2022. Dkt. No. 78.

In his motion for default judgment, Mr. Block requests an order striking Gennaro's answer to the First Amended Complaint ("FAC"), the operative pleading, and requiring Gennaro's to provide injunctive relief, and to pay $4,000 in statutory damages, $63,116.50 in attorney's fees and $10,494.38 costs, less an offset of $12,250 for the settlement with Ganeshkrupa 86. *See* Dkt. No. 83 at 24. Pursuant to the Court's interim order (Dkt. No. 84), Mr. Block submitted a certificate of service indicating that he served his motion papers on Gennaro's. *See* Dkt. No. 85. The Court has received no request from Gennaro's to set aside its default and Gennaro's has not responded to the pending motion for default judgment. The matter is deemed suitable for determination without oral argument. The June 28, 2022 hearing is vacated. Civil L.R. 7-1(b). For the reasons discussed below, Mr. Block's motion for default judgment is granted; however, the Court awards a modified sum in attorney's fees and costs.[3]

## I.     BACKGROUND

According to the FAC, Mr. Block is substantially limited in his ability to walk and requires a cane, walker, wheelchair, or electric scooter for mobility. Dkt. No. 33 ¶ 8. Mr. Block says that he regularly travels to the area where the Facility is located. *Id.* ¶ 10. On September 30, 2020, he visited the Facility to buy some refreshments. *Id.* During that visit, Mr. Block says that he could

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 15, 32.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    not locate any designated accessible parking stalls in the Facility's parking lot.  As a result, Mr.

2    Block says that he had to park in a standard parking stall that lacked an access aisle that he needs

3    in order to unload his mobility scooter.  *Id*. ¶ 10(a).  Mr. Block was forced to rely on his cane,

4    which he says "was difficult and painful."  *Id*.  Additionally, Mr. Block says that he could not find

5    a ramp providing access to the walkway leading to the Facility's entrance.  Thus, he was required

6    to step up onto the curb, "exacerbating the pain and difficulty he experienced."  *Id*. ¶ 10(b).

7        After filing the present lawsuit, Mr. Block hired a Certified Access Specialist to inspect the

8    Facility as part of the procedures required under General Order No. 56.  Dkt. No. 83-1 ¶ 4.

9    According to Mr. Block, the inspection was held on April 19, 2021 and was attended by Mr.

10   Block, Tanya Moore (Mr. Block's counsel), Mr. Block's access specialist, and defendant

11   Ganeshkrupa 86, which was not represented by counsel at that time.  Dkt. No. 83-1 ¶ 7.

12   Gennaro's, which was represented by Stephan Barber and other attorneys at the firm of JRG

13   Attorneys at Law, apparently did not attend the inspection.  *See id*.

14       During the inspection, it was noted that there was a newly designated accessible parking

15   stall, access aisle, and curb ramp near the entrance to the Facility.  However, Mr. Block's access

16   specialist determined that those alterations had not been done correctly.  For example, Mr. Block

17   says that the new curb ramp is located within the access aisle, causing excessive slopes in the

18   access aisle.  *Id*. ¶ 5.

19       Ms. Moore avers that around May 13, 2021, Mr. Barber advised that Ganeshkrupa 86 had

20   also retained him to represent it in this matter.  *Id*. ¶ 8.  Ms. Moore says that the parties scheduled

21   the required General Order No. 56 settlement meeting for May 24, 2021, but had to reschedule the

22   meeting for the following day when defendants failed to appear for the originally scheduled

23   meeting time.  *Id*. ¶ 9.

24       The parties did not reach a settlement during their settlement meeting or the subsequent

25   August 4, 2021 mediation.  *See id*. ¶ 10; *see also* Dkt. Nos. 20, 23.  On August 31, 2021, the Court

26   held a case management conference and issued a scheduling order setting deadlines, including a

27   January 31, 2022 fact discovery cutoff, an August 24, 2022 final pretrial conference, and a three-

28   day jury trial to begin on September 7, 2022.  Dkt. Nos. 28, 29.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

On September 9, 2021, Mr. Block filed his FAC, identifying various accessibility barriers both inside and outside the Facility.  Dkt. No. 33.  For present purposes, Mr. Block seeks an order requiring Gennaro's to remove all of the exterior accessibility barriers alleged in the FAC, which are discussed in more detail below.  *See id.* ¶ 11(a)-(k).

Mr. Block says that he proceeded with discovery regarding the Facility's construction and alteration history, including written discovery requests to the defendants, subpoena(s) for documents to the Facility's former tenants, a request to the local building authority, and depositions of Ganeshkrupa 86 and the Facility's former tenant.  Dkt. No. 83-1 ¶ 11.

Mr. Block states that in late December 2021, Mr. Barber advised that defendants had been sued in another accessibility lawsuit brought by a different plaintiff, Scott Johnson.  *Id.* ¶ 12; *see also* No. 5:21-cv-08102-SVK, *Johnson v. Gennaro's Limited Liability Company, et al.* ("Johnson Action").  Mr. Barber further stated that defendants would not permit any discovery or depositions to proceed until they brought a motion asking this Court to consolidate both lawsuits.  Mr. Block agreed to stipulate to an extension of discovery deadlines while defendants' anticipated motion for consolidation was pending, but he otherwise opposed consolidation of the two lawsuits.  *Id.*

On January 6, 2022, the parties filed their stipulated request to extend discovery.  Dkt. No. 35.  The Court denied that request the following day, finding that neither "the existence of unresolved discovery disputes" nor the "pendency of another action, which may or may not be consolidated with the present matter" constituted good cause to delay discovery.  Dkt. No. 36. However, Ms. Moore states that defense counsel nonetheless refused to schedule depositions while defendants' motion for consolidation was pending.  *See* Dkt. No. 83-1 ¶ 13; *see also* Dkt. Nos. 37, 46, 50, 51.  In resolving that deposition dispute, the Court briefly extended discovery for two weeks.  Dkt. No. 51.  Additionally, at the parties' request the Court referred this matter to Magistrate Judge Tse for a settlement conference.  *See* Dkt. Nos. 36, 56.

Meanwhile, on January 7, 2022 defendants moved to consolidate the present lawsuit with the Johnson Action.  Dkt. No. 41.  Shortly after, on January 14, 2022, defense counsel moved to withdraw as counsel of record for both defendants, citing a conflict of interest.  Dkt. No. 52.

The Court denied defendants' motion for consolidation, finding that the requested relief

4

was not warranted.  Dkt. No. 69.  Defense counsel's motion to withdraw was granted as to Ganeshkrupa 86, which had already obtained other counsel.  Dkt. Nos. 62, 63.  The motion to withdraw was denied as to Gennaro's, without prejudice to defense counsel providing additional information on a renewed motion.  Dkt. No. 62.

On February 23, 2022, the Court conditionally granted defense counsel's renewed motion for leave to withdraw as counsel of record for Gennaro's.  Dkt. No. 70.  The Court granted the motion subject to the condition that "Messrs. Barber and Cox and JRG Attorneys at Law shall continue to accept service of papers for the purpose of forwarding them to Gennaro's until Gennaro's obtains substitute counsel or until the Court orders otherwise."  *Id*. at 4 (citing Civil L.R. 11-5(b)).  Additionally, the order advised Gennaro's that it may not proceed without an attorney in this lawsuit; that it retains all the obligations of a litigant; and that its failure to obtain other counsel may lead to an order striking its pleadings or entry of its default.  *Id*. at 4-5.  Further, Gennaro's was given until March 18, 2022 to obtain new counsel or show cause why it needed additional time to secure new counsel.  *Id*. at 5.

There is no indication that Gennaro's has obtained other counsel.  Additionally, Ms. Moore states that Gennaro's did not appear for its noticed deposition.  Dkt. No. 83-1 ¶ 14.

Mr. Block and Ganeshkrupa 86 participated in a settlement conference on March 21, 2022 with Judge Tse.  Dkt. No. 76.  Gennaro's did not participate in those proceedings.  *Id*.  As noted above, Mr. Block and Ganeshkrupa 86 agreed to a settlement, the terms of which otherwise are confidential, but which Mr. Block says include a $12,250 monetary payment as a negotiated sum for Ganeshkrupa 86's portion of Mr. Block's fees and costs.  *Id*.; Dkt. No. 83-1 ¶ 15.  Mr. Block also notes that Ganeshkrupa 86 entered into a consent decree in the Johnson Action.  Dkt. No. 83-1 ¶ 16, Ex. B.  However, Mr. Block contends that the consent decree in the Johnson Action is not as comprehensive as the injunctive relief he now seeks from Gennaro's.

## II.    LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a).  After entry of default, a court may, in its discretion, enter default judgment.

Fed. R. Civ. P. 55(b)(2);[4] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding whether to enter default judgment, a court may consider the following factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

## III.     DISCUSSION

### A.     Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Federal question jurisdiction is based on Mr. Block's ADA claim for relief.  28 U.S.C. § 1331.  The Court has supplemental jurisdiction over his Unruh Act claim pursuant to 28 U.S.C. § 1367.

This Court is also satisfied that personal jurisdiction exists over Gennaro's.  Mr. Block's FAC and public records submitted with the present motion indicate that Gennaro's is a California limited liability company that owns the real property in San Jose, California on which the Facility is located.  Dkt. No. 33 ¶ 7; Dkt. No. 83-1 ¶ 2; Dkt. No. 83-2, Ex. A.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotations and

United States District Court
Northern District of California

---

[4] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared."  Fed. R. Civ. P. 55(b)(2).  There are no such issues presented here.

1    citation omitted) (alteration in original); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

2    U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and

3    the underlying controversy, principally, activity or an occurrence that takes place in the forum

4    State and is therefore subject to the State's regulation.").

### B.    Service of Process

6    Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic

7    corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a
> managing or general agent, or any other agent authorized by appointment or
> by law to receive service of process and—if the agent is one authorized by
> statute and the statute so requires—by also mailing a copy of each to the
> defendant.

11   Fed. R. Civ. P. 4(h)(1)(B).  Alternatively, Rule 4 provides that service on a corporation may be

12   made by "following state law for serving a summons in an action brought in courts of general

13   jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ.

14   P. 4(e)(1), (h)(1)(A).

15   California Code of Civil Procedure section 416.10 provides that a corporation may be

16   served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as

17   agent for service of process" or "[t]o the president, chief executive officer, or other head of a

18   corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a

19   controller or chief financial officer, a general manager or person authorized by the corporation to

20   receive service of process."  Cal. Code Civ. Proc. § 416.10(a), (b).  In lieu of personal delivery,

21   California law permits substituted service on a person to be served under section 416.10 by

22   (1) "leaving a copy of the summons and the complaint during usual office hours in his or her

23   office . . . with the person who is apparently in charge thereof" and (2) "thereafter mailing a copy

24   of the summons and complaint by first-class mail, postage prepaid to the person to be served at the

25   place where a copy of the summons and complaint were left."  Cal. Code Civ. Proc. § 415.20(a).

26   Mr. Block filed a proof of service indicating that Gennaro's was served on February 9,

27   2021.  Dkt. No. 9.  Gennaro's subsequently appeared through counsel and answered both the

28   original complaint and the FAC.  Dkt. Nos. 12, 34.  The Court finds that Gennaro's properly was

United States District Court
Northern District of California

7

served with process.  *See generally Dick v. Corman*, No. 21-cv-07169-JSC, 2022 WL 1211400, at
*2 (N.D. Cal. Apr. 25, 2022) ("'A general appearance by a party is equivalent to personal service
of summons on such party.'") (quoting Cal. Civ. Proc. Code § 410.50(a)).

### C.   *Eitel* Factors

The *Eitel* factors weigh in favor of entering default judgment.

#### 1.   The possibility of prejudice to Mr. Block

The first *Eitel* factor requires the Court to consider whether Mr. Block would be prejudiced
if default judgment is not entered.  The record demonstrates that although Gennaro's initially
appeared in this matter, Gennaro's has become unresponsive and failed to defend this action.  As
discussed below, the relief sought by Mr. Block overlaps, in some respects, with the relief
Ganeshkrupa 86 apparently has agreed to provide pursuant to the consent decree entered in the
Johnson Action.  However, insofar as that consent decree is conditioned on obtaining Gennaro's
consent for alterations to the exterior of the Facility (Dkt. No. 83-2, Ex. B ¶ 7)—i.e., the only
alterations at issue here—the Court agrees that unless default judgment is entered, Mr. Block will
have no other means of recourse.  This factor weighs in favor of default judgment.  *See, e.g.,
Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018)
(finding that the plaintiff would be prejudiced if default judgment were not entered because she
"would have no other means of recourse against Defendants for the damages caused by their
conduct.").

#### 2.   The merits of Mr. Block's claims and the sufficiency of the complaint

Pursuant to the second and third *Eitel* factors, this Court concludes that the FAC alleges
meritorious substantive claims for relief.

#### a.   ADA Title III, 42 U.S.C. § 12181, *et seq*.

Title III of the ADA prohibits discrimination by places of public accommodation:  "No
individual shall be discriminated against on the basis of disability in the full and equal enjoyment
of the goods, services, facilities, privileges, advantages, or accommodations of any place of public
accommodation by any person who owns, leases (or leases to), or operates a place of public
accommodation."  42 U.S.C. § 12182(a).  To prevail on his Title III discrimination claim, Mr.

1    Block must show that (1) he is disabled within the meaning of the ADA; (2) Gennaro's is a private

2    entity that owns, leases (or leases to), or operates a place of public accommodation; and (3) he was

3    denied public accommodations by Gennaro's because of his disability.  42 U.S.C. § 12182(a)-(b);

4    *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

5                                    **i.      Mr. Block's Article III Standing**

6            Turning first to Mr. Block's Article III standing to pursue his ADA claim:   To establish

7    Article III standing to bring an ADA claim, Mr. Block must demonstrate that he suffered an injury

8    in fact, that the injury is fairly traceable to defendants' challenged conduct, and that the injury can

9    be redressed by a favorable decision.  *Ridola*, 2018 WL 2287668 at *5 (citing *Hubbard v. Rite Aid

10   Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)).  "[A]n ADA plaintiff can establish standing

11   to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact

12   coupled with an intent to return to a noncompliant facility."  *Chapman v. Pier 1 Imports (U.S.),

13   Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).

14           Mr. Block's FAC alleges that he is disabled within the meaning of the ADA; that he was

15   denied equal access at the Facility; and that he personally encountered barriers to full and equal

16   access there.  Dkt. No. 11 ¶¶ 8, 10-11.  Specifically, Mr. Block alleges that during his September

17   30, 2020 visit to the Facility, there was no designated accessible parking space and no ramp

18   providing access to the walkway leading to the Facility's entrance, forcing him to rely on his cane,

19   which caused him pain and difficulty.  Dkt. No. 33 ¶ 10.  Accepting Mr. Block's allegations as

20   true, he has demonstrated an injury-in-fact.  *See Chapman*, 631 F.3d at 947 ("Because the

21   ADAAG [ADA Accessibility Guidelines] establishes the technical standards required for 'full and

22   equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will

23   impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA.

24   That discrimination satisfies the 'injury-in-fact' element of *Lujan*."); *see id*. at 947 n.4 ("Where

25   the barrier is related to the particular plaintiff's disability, . . . an encounter with the barrier

26   necessarily injures the plaintiff by depriving him of full and equal enjoyment of the facility.").

27           The FAC further alleges that Mr. Block is "deterred from visiting the Facility because [he]

28   knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations

United States District Court
Northern District of California

9

were and are unavailable to [him] due to [his] physical disabilities."  Dkt. No. 33 ¶ 12.  *See*

*Chapman*, 631 F.3d at 949 ("Demonstrating an intent to return to a noncompliant accommodation

is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.

A disabled individual also suffers a cognizable injury if he is deterred from visiting a

noncompliant public accommodation because he has encountered barriers related to his disability

there.").

Mr. Block's factual allegations are accepted as true by virtue of Gennaro's default, and an

award of statutory damages and injunctive relief would redress Mr. Block's alleged injuries.

Accordingly, this Court finds that Mr. Block has Article III standing to sue under the ADA with

regard to the barriers he encountered as well as those that are related to his disability that were

identified during the parties' joint site inspection.  *See id.* at 944 ("[W]e hold that an ADA plaintiff

who establishes standing as to encountered barriers may also sue for injunctive relief as to

unencountered barriers related to his disability.").

### ii.      Disability

Because the complaint's well-pled factual allegations are deemed true, Mr. Block has

established that he is disabled within the meaning of the ADA.  Under the ADA, a physical

impairment that substantially affects a major life activity, such as walking or performing manual

tasks, qualifies as a disability.  42 U.S.C. §§ 12102(1)(A), 12102(2)(A).  As discussed above, Mr.

Block says that he is substantially limited in his ability to walk, and must use a cane, walker,

wheelchair, or electric scooter for mobility.  Dkt. No. 33 ¶ 8.

### iii.     Owns, operates, leases (or leases to) a public accommodation

Although the FAC's allegations are somewhat sparse, the record presented is sufficient to

infer that the Facility is a store.  *Id.* ¶¶ 9, 10; Dkt. No. 83 at 1.  Sales establishments are considered

public accommodations under the ADA.  *See* 42 U.S.C. § 12181(7)(E) (listing "a bakery, grocery

store, clothing store, hardware store, shopping center, or other sales or rental establishment" as a

"public accommodation").  Mr. Block has also demonstrated that Gennaro's owns the real

property where the Facility is located.  Dkt. No. 33 ¶ 7; Dkt. No. 83-1 ¶ 2; Dkt. No. 83-2, Ex. A.

United States District Court
Northern District of California

10

United States District Court
Northern District of California

iv.     **Discrimination**

Unlawful discrimination under the ADA occurs when features of a public accommodation deny disabled persons the opportunity "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of the public accommodation.  42 U.S.C. § 12182(b)(1)(A)(i).  Such discrimination includes the failure to remove architectural barriers in existing facilities where removal is readily achievable, and the failure to make facilities available to disabled persons through alternative means without much difficulty or expense.  *Id*. § 12182(b)(2)(A)(iv)-(v).  The ADAAG "provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945.  "Accordingly, a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018 WL 2287668 at *7.  Mr. Block contends that the identified accessibility barriers at the Facility violate various provisions of the ADAAG, 1991 Standards for Accessible Design ("1991 Standards") and the 2010 Standards for Accessible Design ("2010 Standards").

"There are three categories of accessibility requirements under Title III of the ADA—the 'new construction' provisions . . .; the 'alteration' provisions . . .; and the 'readily achievable' provisions.'" *Castillo-Antonio v. Dabwan*, No. 21-cv-02342-DMR, 2022 WL 210395, at *5 (N.D. Cal. Jan. 7, 2022) (quoting *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011). "To satisfy these standards, buildings with new construction or post-January 1992 alterations must comply with either the 1991 or 2010 ADA Standards for Accessible Design (ADAAG), depending on the date the construction or alterations began." *Id*. at *6 (citing 28 C.F.R. § 36.406).  For newly constructed facilities,[5] "compliance with the ADA's antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Chapman*, 631 F.2d at 945 (quoting 42 U.S.C. § 12183(a)(1)).  "In existing but unaltered facilities, barriers must be removed where it is 'readily achievable' to do so." *Moeller*, 816 F. Supp. 2d at 847.  "The

---

[5] A newly constructed facility is defined one built for first occupancy after January 26, 1993.  *See* 42 U.S.C. § 12183(a)(1); *see also* 28 C.F.R. § 36.401(a)(1) ("discrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.").

removal of barriers is 'readily achievable' when it is 'easily accomplishable and able to be carried out without much difficulty or expense.'" *Id*. (quoting 42 U.S.C. §§ 12181(9), 12182(b) (2)(A)(iv)).  "Existing facilities that were altered after January 26, 1992 are also required, 'to the maximum extent feasible, to be 'readily accessible to and useable by' individuals with disabilities.'" *Castillo-Antonio*, 2022 WL 210395 at *5 (quoting *Moeller*, 816 F. Supp. 2d at 847). "The Justice Department's ADA Architectural Guidance defines alteration as 'a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof.'" *Id*. at *5 n.3 (quoting *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1079 (N.D. Cal. 2014)).

Mr. Block alleges, on information and belief, that the Facility was designed and constructed after January 26, 1993.  Dkt. No. 33 ¶ 23.  He further states that defendants made significant alterations to exterior of the Facility after the present lawsuit was filed.  *See* Dkt. No. 83 at 2; *see also* Dkt. No. 83-1 ¶ 5.  In view of those recent alterations, Mr. Block contends that the "readily achievable" defense does not apply to most of the barriers at issue.  Dkt. No. 83 at 7 n.3.  Additionally, the altered portions of the Facility's exterior must comply with the 2010 Standards, which went into effect on March 15, 2012.  *See* Dkt. No. 83 at 6; 28 C.F.R. § 36.304(d)(2)(ii)(B); *Kohler v. Flava Enterprises, Inc*., 779 F.3d 1016, 1019 (9th Cir. 2015); *see also Ridola*, 2018 WL 2287668 at *7 ("Alterations to facilities undertaken after March 15, 2012 must comply with the 2010 Standards.").  Mr. Block nonetheless cites the 1991 Standards which he says would have applied at the time of his September 30, 2020 visit to the Facility, and he provides his proposed "readily achievable" solutions.

Mr. Block has sufficiently alleged the existence of architectural barriers prohibited under the ADA[6]:

---

[6] Mr. Block states that the specific barriers discussed above excludes those that have already been addressed by his settlement with Ganeshkrupa 86.  *See* Dkt. No. 83 at 7.

12

United States District Court
Northern District of California

1     *Route of travel from public sidewalk to Facility entrance (Dkt. No. 33 ¶ 11(a))*

2         Mr. Block's FAC alleges that "[t]he route of travel from the public sidewalk to the Facility

3 entrance contains excessive slopes in the direction of travel, cross slopes, and vertical height

4 change, and is not properly identified by directional signage."  Dkt. No. 33 ¶ 11(a).[7]

5         The 1991 Standards provide that "[a]t least one accessible route complying with [section]

6 4.3 shall be provided within the boundary of the site from public transportation stops, accessible

7 parking spaces, passenger loading zones if provided, and public streets or sidewalks, to an

8 accessible building entrance."  1991 Standards § 4.1.2(1).  Section 4.3 of the 1991 Standards, in

9 turn, contains a number of provisions regarding accessible routes.  Although Mr. Block does not

10 identify the particular subsections at issue, there are provisions prohibiting excessive slopes or

11 changes in levels.  *See, e.g., id*. §§ 4.3.7, 4.3.8.  Mr. Block does not identify the particular

12 provision(s) regarding signage that are at issue.

13     *Route of travel from designated accessible parking to Facility entrance*

14         Mr. Block's FAC alleges that "[t]he route of travel from the designated accessible parking

15 to the Facility entrance lacks proper clear width, and contains excessive cross slopes, uneven

16 surfaces, changes in level, and gaps in the walking surface."  Dkt. No. 33 ¶ 11(b).  Additionally,

17 Mr. Block alleges that "[t]he route of travel from the southernmost designated accessible parking

18 stall to the Facility entrance contains excessive cross slopes and openings in the walking surface,

19 lacks proper clear width due to the propped-open door, and the top landing of the ramp along this

20 route is excessively sloped."  *Id.* ¶ 11(h).  He contends that these features violate the 1991

21 Standards §§ 4.1.2(1) and "4.3, *et seq*."  Although Mr. Block does not identify the particular

22 subsections at issue, there are provisions governing slopes, level changes and minimum clear

23 width for accessible routes.  *See, e.g.,* 1991 Standards, §§ 4.1.2(1), 4.3, 4.3.3, 4.3.7, 4.3.8.

24         The Johnson Action consent decree requires the provision of "a clear, unobstructed Fully

25 Compliant path of travel, demonstrating surface slopes not in excess of 2%, from the head of the

26 access aisle to the accessible entrance(s) at the Facility."  Dkt. No. 83-2, Ex. B.  However, Mr.

27

28     ―――――――――――――
[7] This particular barrier is not clearly addressed in the Johnson Action consent decree.  *See* Dkt. No. 83-2, Ex. B.

United States District Court
Northern District of California

Block contends that the consent decree is not as comprehensive as the relief he seeks in the present action, including with respect to the need for a curb ramp, remediation of height changes and gaps in the walking surface of accessible routes, and the need for accessible routes from more than one of the designated accessible parking spaces he says is required. Dkt. No. 83 at 8. As noted above, the Court agrees that the Johnson Action consent decree does not preclude Mr. Block's requested relief, insofar as the consent decree is conditioned on obtaining Gennaro's consent for alterations to the exterior of the Facility (Dkt. No. 83-2, Ex. B ¶ 7).

### *Ice freezer location*

Mr. Block alleges that the ice freezer located at the exterior of the Facility "is not located adjacent to an accessible route of travel or proper level clear ground space." Dkt. No. 33 ¶ 11(c).[8] Mr. Block contends that this violates the 1991 Standards §§ 4.2.4 and 4.27.2, which require clear floor or ground space for wheelchairs and generally provide that "[c]lear floor space complying with [section] 4.2.4 that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment." *See* 1991 Standards § 4.27.2.

### *Insufficient number of designated accessible parking stalls*

Mr. Block alleges that the Facility has an insufficient number of designated accessible parking stalls and does not have any van-accessible parking stalls. Dkt. No. 33 ¶ 11(e). Additionally, he says that the designated accessible parking stalls that are provided "lack proper dimensions, pavement markings, and signage" (with one stall "lack[ing] an access aisle entirely") and also "contain excessive slopes, uneven surfaces, changes in level, and openings in the walking surface." *Id.* ¶¶ 11(f), (g). Mr. Block states that there are over 50 parking stalls in the Facility's front and rear parking lots (Dkt. No. 83-1 ¶ 17), and the 1991 Standard § 4.1.2(5) thus requires at least three designated accessible parking stalls, one of which must be van-accessible. *See* 1991 Standards § 4.1.2(5). He does not cite any other provisions of the ADAAG that are at issue.

---

[8] This barrier is not covered by the Johnson Action consent decree. Dkt. No. 83-2, Ex. B.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Curb ramp at newly installed designated accessible parking stall*

With respect to the recently installed designated accessible parking stall, Mr. Block says that "[t]he change in direction transition at the top landing of the newly constructed curb ramp serving the newly constructed designated accessible parking stall is excessively sloped" and that the curb ramp "projects into the access aisle serving the newly constructed designated accessible parking stall, creating excessive slopes and height changes, and the ramp lacks proper clear width and edge protection."  Dkt. No. 33 ¶¶ 11(i), (j); *see also* Dkt. No. 83-1 ¶ 5.  Mr. Block claims that this feature violates the "2010 Standards §§ 406, *et seq*." (Dkt. No. 83 at 10), which among other things, provide that "[c]urb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles."  2010 Standards § 406.5.

*Lack of proper maneuvering clearances at Facility entrance*

Mr. Block alleges that "[t]he required maneuvering clearances at the exterior side of the Facility entrance contain excessive slopes and openings in the walking surface" (Dkt. No. 33 ¶ 11(k)). He claims that this violates 1991 Standards § 4.13.6, which concerns the minimum maneuvering clearances at doors that are not automatic or power-assisted and states that "[t]he floor or ground area within the required clearances shall be level and clear."

### v.    "Readily achievable"

Inasmuch as Mr. Block's FAC alleges that the Facility was designed and constructed after January 26, 1993, it is not clear why Mr. Block suggests that the "readily achievable" defense may apply to at least some of the barriers at issue.  *See* Dkt. No. 33 ¶ 23; Dkt. No. 83 at 7 n.3.  As discussed above, buildings with new construction or post-January 1992 alterations must comply with either the 1991 or 2010 Standards, depending on the date the construction or alterations began."  *Castillo-Antonio*, 2022 WL 210395, at *6 (citing 28 C.F.R. § 36.406).  Nevertheless, even assuming the "readily achievable" defense applies, it does not preclude the relief Mr. Block seeks.

In the Ninth Circuit, while an ADA defendant "bears the ultimate burden of persuasion that barrier removal is not readily achievable," the plaintiff has the initial burden to "plausibly show

15

how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances." *Lopez v. Catalina Channel Express, Inc*., 974 F.3d 1030, 1038, 1040 (9th Cir. 2020).  To satisfy their initial burden, plaintiffs are not required to address in detail each of the four factors under 42 U.S.C. § 12181(9)(A)-(D),[9] although "it is in plaintiffs' best interest to submit as much evidence as possible pertaining to each of the § 12181(9) factors in their initial barrier-removal proposal[.]" *Id*. at 1039.  If the plaintiff meets his initial burden, "the burden shifts to the defendant to counter the plaintiff's initial showing, and at that point the district court is required under the statute to weigh each of the § 12181(9) factors to determine whether removal of the architectural barrier is readily achievable or not." *Id*.

Mr. Block contends that removal of many of the barriers in question is readily achievable and can be accomplished without much difficulty or expense.  For example, he proposes that the path of travel from the public sidewalk to the Facility entrance can be resurfaced or replaced; the exterior ice freezer can be repositioned so that it is adjacent to the path of travel from the public sidewalk; and the parking lot can be resurfaced as necessary and repainted..  Dkt. No. 83 at 7, 8, 9.

Federal regulations provide a non-exclusive list of steps to remove barriers, including "[r]earranging tables, chairs, vending machines, display racks, and other furniture," and "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(4), (18), and courts have observed that the listed items are "examples of readily achievable steps to remove barriers . . .."

---

[9] Under the ADA, the factors to be considered in determining whether an action is "readily achievable" include:

    (A) the nature and cost of the action needed under this chapter;
    (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
    (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
    (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)-(D).

United States District Court
Northern District of California

*Johnson v. Altimira Corp.*, No. No. 16-cv-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. Mar. 27, 2017). Moreover, at the default judgment stage, courts have found allegations similar to Mr. Block's allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See, e.g., Castillo-Antonio*, 2022 WL 210395 at *7 (concluding that plaintiff met his initial burden where he alleged that the identified barriers "can be simply modified" and removal of the barriers is "readily achievable"); *Johnson v. Garlic Farm Truck Ctr., LLC*. No. 0-cv-03871-BLF, 2021 WL 2457154, at *6 (N.D. Cal. June 16, 2021) (concluding that plaintiff met his initial burden where he alleged that the identified barriers are "easily removed without much difficulty or expense" and are "the types of barriers identified by the Department of Justice as presumably readily achievable to [be] remove[d]," and that "there are numerous alternative accommodations" to provide people with disabilities a greater level of access even if defendants could not achieve complete removal of the barriers); *Altimira Corp.*, 2017 WL 1383469 at *3 (concluding that the plaintiff's allegations, including those concerning accessible parking spaces fell within the scope of readily achievable steps set forth in 28 C.F.R. § 36.304).

Accordingly, the Court finds that Mr. Block has met his initial burden to plausibly show that the cost of removing the architectural barriers at issue does not exceed the benefits under the circumstances. The burden thus shifts to Gennaro's to show that removal of the identified barriers is not readily achievable. Gennaro's, however, has failed to defend this action and has not met its burden.

### b.    Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *M.J. Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Block has an ADA claim based on the identified barriers at the Facility, he also has an Unruh Act claim based on those barriers.

### 3.    The amount of money at stake

This *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal., Aug. 20, 2018). Mr. Block seeks statutory damages under the Unruh Act and an

award of attorney's fees and costs.  For the reasons discussed below, the amount of damages requested is not substantial and is proportional to the conduct alleged.  The amount of attorney's fees claimed, while substantial, is subject to reduction by the Court, as explained below.

### 4. The possibility of a dispute concerning material facts and whether Gennaro's default was due to excusable neglect

Under the fourth and fifth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether defendants' failure to respond was the result of excusable neglect.  *Griffin*, 2018 WL 4471073 at *5; *Ridola*, 2018 WL 2287668 at *13.  Because Mr. Block asserts plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a possibility of a dispute as to material facts.  Moreover, there is no indication that Gennaro's default was due to excusable neglect.  Following withdrawal of its prior counsel, Gennaro's has not appeared through other counsel, despite warnings that it was required to do so.  *See* Dkt. No. 70.  Mr. Block has filed a certificate regarding service of the present motion on Gennaro's.  Dkt. No. 85.  As noted above, the Court has received no response from Gennaro's.  The record thus suggests that Gennaro's has chosen not to present a defense in this matter.  These factors weigh in favor of default judgment.

### 5. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, Gennaro's failure to participate in this litigation makes that impossible.  *See Ridola*, 2018 2287668 at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate.").  Default judgment therefore is Mr. Block's only recourse.  *See United States v. Roof Guard Roofing Co, Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

### D. Requested Relief

Because this Court concludes that default judgment is warranted, it now considers Mr. Block's request for injunctive relief, as well as statutory damages under the Unruh Act, and

attorneys' fees and costs.

### 1.      Injunctive Relief

Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *M.J. Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)).  Injunctive relief is also available under the Unruh Act.  *See* Cal. Civ. Code § 52.1(c).  "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Griffin*, 2018 WL 4471073 at *6 (quoting *Moeller*, 816 F. Supp. 2d at 859).

For the reasons discussed above, Mr. Block has shown that he is entitled to injunctive relief, having demonstrated that features at the Facility violate one or more provisions of the 1991 and 2010 Standards in some fashion.  *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 998, 1015-16 (C.D. Cal. 2014), *abrogated on other grounds by Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020) (granting motion for default judgment against the defendant landlord and compelling that defendant to provide injunctive relief to the extent the defendant had the legal right and ability to make the physical changes necessary to remove the specific barriers about which the plaintiff complained).  However, the Court finds that Mr. Block's proposed judgment lacks sufficient specificity with respect to all the repairs he claims are required and the corresponding requirements and particular provisions of the 1991 and 2010 Standards that are at issue.  As discussed above, his motion also does not identify provisions of the 1991 and 2010 Standards that correspond to all of the alleged violations at issue.  Accordingly, the Court requires Mr. Block to submit a proposed form of injunction that complies with Rule 65(d) of the Federal Rules of Civil Procedure, which requires among other things that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B), (C).

United States District Court
Northern District of California

### 2. Statutory Damages

"Monetary damages are not available in private suits under Title III of the ADA. *M.J. Cable, Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002)). However, the Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . .." *Ridola*, 2018 WL 2287668 at *15 (citing Cal. Civ. Code § 52(a)). Mr. Block "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *M.J. Cable, Inc.*, 481 F.3d at 731. He requests a statutory award of $4,000 with respect to his one visit to the Facility. This Court finds that Mr. Block has established his entitlement to an award of $4,000 in statutory damages.

### 3. Attorney's Fees and Costs

Mr. Block requests $63,116.50 in attorneys' fees and $10,494.38 in costs, less an offset of $12,250 for his settlement with Ganeshkrupa 86, for a total award of $65,360.88. Dkt. No. 83 at 24. *See Leung v. Verdugo Hills Hospital*, 302 (repudiating the common law release rule, noting that "[f]or a variety of reasons—such as the settling defendant's limited resources or relatively minor role in causing the plaintiff's injury—a plaintiff may be willing to release one tortfeasor for an amount far less than the total necessary to fully compensate the plaintiff for all injuries incurred."). The ADA gives courts the discretion to award attorney's fees, including litigation expenses and costs, to prevailing parties. *M.J. Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Similarly, the Unruh Act provides for an award of fees "as may be determined by the court." Cal. Civ. Code § 52(b)(3).

#### a. Attorney's Fees

Whether calculating attorney's fees under California or federal law, courts follow the lodestar approach. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), abrogated on other grounds by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

### i.       Reasonable Hourly Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  *Blum*, 465 U.S. at 896 n.11.  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

Mr. Block seeks fees based on the hourly rates of attorney Tanya Moore and two paralegals, Whitney Law and Isaac Medrano.  Although Ms. Moore says that her current rate is $650/hour (Dkt. No. 83-1 ¶ 24), Mr. Block seeks fees for her work at $475/hour.  He seeks fees for work performed by Ms. Law at $195/hour and by Mr. Medrano at $175/hour.

Ms. Moore says that she has been practicing law for over 20 years and has specialized in disability access litigation for about 12 years.  Dkt. No. 83-1 ¶ 21.  Ms. Law says she has 13 years of paralegal experience in civil litigation, including nine years specializing in disability access litigation.  Dkt. No. 83-3 ¶ 2.  Mr. Medrano says that he has over 10 years of paralegal experience, including five years specializing in disability access litigation.  Dkt. No. 83-4 ¶ 2.

Courts in this district, including this one, have awarded fees at these same or similar rates for Ms. Moore and her paralegal staff, finding that those rates are in line with fees awarded to other attorneys and paralegals with comparable or greater experience.  *See, e.g., Hernandez v. BMV Hotels, LP*, No. 18-cv-07511-NC, 2021 WL 5053491, at *2-3 (N.D. Cal. Apr. 14, 2021); *Hernandez v. Spring Charter Inc.*, No. 19-cv-01479-TSH, 2020 WL 1171121, at *4 (N.D. Cal.

1   Mar. 11, 2020); *Rivera v. Crema Coffee Company LLC*, No. 5:18-cv-01531-VKD, 2020 WL

2   4701131, at *3 (N.D. Cal. Aug. 13, 2020).

3          Accordingly, the Court finds Mr. Block's requested rates to be reasonable.

4                          **ii.      Reasonable Hours**

5          Mr. Block "bears the burden of establishing entitlement to an award and documenting the

6   appropriate hours expended[.]" *Hensley*, 461 U.S. at 437.  "Where the documentation of hours is

7   inadequate, the district court may reduce the award accordingly." *Id.* at 433.  A district court

8   should also exclude from the lodestar fee calculation any hours that were not "reasonably

9   expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 433-

10  34; *see also Chalmers*, 796 F.2d at 1210 ("Those hours may be reduced by the court where

11  documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if

12  the hours expended are deemed excessive or otherwise unnecessary.").

13         Although some of the fees Mr. Block seeks were incurred on matters that pertain to both

14  Gennaro's and Ganeshkrupa 86, Mr. Block states that he "incurred no fees attributable solely to

15  Ganeshkrupa [86]; all efforts to achieve relief were as against all defendants."  Dkt. No. 83 at 12.

16         The Court has reviewed the submitted attorney and paralegal timesheets (Dkt. No. 83-2,

17  Ex. C) and finds that certain deductions are warranted as discussed below.

18         The Court declines to order Gennaro's to pay Mr. Block's fees for settlement discussions

19  that did not involve Gennaro's.  Specifically, Mr. Block seeks fees for a total of 12.1 hours (7.6

20  hours by Ms. Moore; 2.8 hours by Ms. Law; 1.7 hours by Mr. Medrano) for time spent in

21  settlement discussions with Ganeshkrupa 86, as well as 12.9 hours (9.3 hours by Ms. Moore, 3.1

22  hours by Ms. Law, and 0.5 hours by Mr. Medrano) for time spent preparing for and participating

23  in the settlement conference with Judge Tse.  *See* Dkt. No. 83 at 17; Dkt. No. 83-2, Ex. C at pp. 1-

24  2, 9.  Mr. Block correctly notes that landlords and tenants are jointly and severally liable for ADA

25  noncompliance.  *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 833, 834 (9th Cir. 2000)

26  (concluding that "a landlord has an independent obligation to comply with the ADA that may not

27  be eliminated by contract" and "both landlord and tenant remain fully liable for compliance with

28  all provisions of the ADA relating to that place of public accommodation.").  However, at least

United States District Court
Northern District of California

United States District Court
Northern District of California

one court in this district, has distinguished between a landlord's joint and several *liability* for ADA noncompliance and an ADA plaintiff's entitlement to fees relating to *settlement* with that landlord's tenant. *See Dytch v. Maxaco LLC*, No. 17-cv-00438-SI, 2019 WL 1934879, at *2 (N.D. Cal. May 1, 2019). Mr. Block fails to persuasively explain why Gennaro's properly should be ordered to pay for time spent negotiating and documenting a settlement with Ganeshkrupa 86. Accordingly, the Court will deduct 25 hours as follows: 16.9 hours from Ms. Moore's time, 5.9 hours from Ms. Law's time, and 2.2 hours from Mr. Medrano's time.

### iii.    Lodestar amount

Multiplying the reasonable hourly rates and the hours reasonably expended, yields a lodestar amount of $53,553.50 as reflected in the following table:

| Attorney/Paralegal | Rate | Hours | Total |
| --- | --- | --- | --- |
| Tanya Moore | $475 | 86.5 | $41,087.50 |
| Whitney Law | $195 | 52.8 | $10,296.00 |
| Isaac Medrano | $175 | 12.4 | $2,170.00 |
| Total | | | $53,553.50 |

From the $53,553.50, the Court deducts the $12,250 settlement with Ganeshkrupa for a total lodestar of **$41,303.50**.

### b.    Costs

For the most part, the record substantiates Mr. Block's request for costs. However, the Court will award $345 (not $395) for service of subpoenas, as that is the sum supported by Mr. Block's submitted documentation. *See* Dkt. No. 83-2, Ex. F. The record otherwise supports Mr. Block's requested costs for the $402 filing fee; $242.75 process server fees; $3,145 access specialist fees; $69.13 copying costs for deposition exhibits; $2,800 fee for expert report; and $3,440.50 for the transcription of the depositions of Ganeshkrupa 86 and former tenants of the Facility. Dkt. No. 1; Dkt. No. 83-1 ¶¶ 28-33 and Exs. D-E, G-I. *See Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1036 (D. Or. 1996) (stating that "recoverable out-of-pocket expenses include those costs 'that would normally be charged to a fee paying client. Thus reasonable expenses, though greater than taxable costs, may be proper.'") (quoting *Harris v. Marhoefer*, 24

F.3d 16, 19-20 (9th Cir.1994)).

Accordingly, the Court awards Mr. Block **$10,444.38** in costs.

## IV.    CONCLUSION

Based on the foregoing, the Court grants Mr. Block's motion for default judgment against Gennaro's, with a modified award for fees and costs as follows:

1.    Mr. Block is awarded statutory damages in the amount of $4,000.

2.    Mr. Block is awarded $41,303.50 in attorney's fees.

3.    Mr. Block is awarded $10,444.38 in costs.

4.    By July 8, 2022, Mr. Block shall submit a proposed form of injunction that complies with Rule 65(d), identifying the repairs he claims are required and the corresponding requirements and particular provisions of the 1991 and 2010 Standards that are at issue.

5.    By July 8, 2022, Mr. Block shall advise whether he intends to dismiss his claim under the California Health & Safety Code.

**IT IS SO ORDERED.**

Dated: June 27, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge